14954

GUYTON v. S. H. KRESS & CO.

(5 S. E. (2d), 295)

January, 1938.

*Mr. C. T. McDonald,* for appellant,

*Messrs. Willcox, Hardee & Wallace* and *McEachin & Townsend,* for respondent,

532

November 1, 1939.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

On February 27, 1937, as appears from the record before us, the plaintiff, then thirteen years of age, purchased at the store of the defendant in Florence, South Carolina, a small bottle of "Elizabeth Post Nail Polish." On the following day, in preparing to apply some of the polish to her fingernails, she placed the bottle, still unopened, on the edge of a warm stove. Upon removing it from the stove, which she did in a minute or so after putting it there, the bottle exploded in her hand, flying fragments of glass entering her left eye, necessitating its removal shortly afterwards. On account of the injuries thus received, she brought this action against the defendant for damages, both actual and punitive, in the sum of $3,000.00.

The complaint alleged, among other things, that plaintiff's injuries were due to and caused by the negligent and reckless acts of the defendant, its servants and employees, in the following particulars:

"(a) In placing upon its counters, and offering for sale to the public, an article of merchandise explosive in its nature, which the defendant knew or should have known;

"(b) In offering for sale, and selling to minors or infants, explosive articles of merchandise;

"(c) In offering for sale, and selling to the public at large, and to infants, an article of merchandise containing explosive ingredients, without a warning thereof, or without directions for its use in a proper and safe manner;

"(d) In offering for sale, and selling to a minor or infant, an article of merchandise containing explosive ingre-

dients, which the defendant knew to be explosive, or would have known, had the proper analysis or inspection been made;

"(e) In failing to properly analyze, inspect and test the articles of merchandise offered for sale;

"(f) In offering for sale a combustible and dangerous substance in a glass container without a warning as to its dangerous potentialities, such as caused by heat, when the defendant knew, or should have known, that heat would cause said substance to explode and hurl particles of glass in all directions and seriously injure any person standing near by; and

"(g) In offering for sale, and holding out to the public, an article of merchandise to be safe and harmless, when the defendant knew, or should have known, that said article of merchandise was dangerous because of its inflammable and explosive tendencies; and

"(h) In selling to an infant or minor a dangerous and explosive substance, when the defendant knew or should have known, that the danger thereof, had it been known to said infant, would not be appreciated or understood by said infant or minor because of his or her immaturity."

The defendant, answering, denied the material allegations of the complaint; and, by way of affirmative defense, alleged "that if the plaintiff purchased the merchandise described in the complaint from this defendant it was merchandise in turn purchased by this defendant from a reputable and well-known manufacturer of such articles; that this defendant had been for many years purchasing such articles from the said manufacturer, and the same had been found satisfactory in every respect; that if the said article contained explosive and combustible substances that fact was unknown to this defendant, and could not, by the exercise of ordinary diligence, be discovered by it; that said article was sold to defendant, hermetically sealed and if sold to plaintiff, was sold in the original package in which it was

purchased." The defense of contributory negligence and willfulness on the part of the plaintiff was also pleaded.

The case was tried in January, 1938, in the Civil Court of Florence. At the close of the testimony, a verdict was directed for the defendant upon the ground that there was no proof of any negligence on its part as alleged in the complaint; that there was no evidence which tended to show that Kress & Company had actual knowledge, or which pointed to any reason why it should have known, that the article in question contained an explosive ingredient, even if that should be conceded as true. A motion by plaintiff for a new trial, made upon grounds renewed here by the exceptions was later heard and refused, and this appeal followed.

The appellant, by several exceptions, charges the trial Judge with error in directing a verdict for the defendant. She argues, in the first place, that it was improper to do so for the reason that "the facts reveal a case of negligence *per se,* sufficient to go to the jury, in respect of respondent's breach of statutory duty relative to labeling." The contention is that the bottle of nail polish in question was "misbranded," and that the action of respondent "in procuring its introduction into interstate commerce and in selling it at Florence" was a breach of statutory duty imposed by both the Federal and the South Carolina Pure Food and Drug Acts, 21 U. S. C. A., § 1 *et seq.,* and Code 1932, § 1452, and was, therefore, negligence *per se.* This contention cannot be sustained. Even if nail polish comes within the terms of the statutory definition of a "drug," about which we here express no opinion an analysis of the allegations of the complaint discloses that the action was based upon common-law negligence; and that neither the Federal nor the State Pure Food and Drug Act was pleaded by the plaintiff or relied on in the trial of the case. The record for appeal does not disclose that the question was made in the Court below or passed upon by that Court. It is, therefore, not properly before us.

The appellant also argues that it was error to direct a verdict for the defendant because "a dealer in such inherently dangerous articles as was this nail polish is under a duty to inspect and remedy or warn of latently dangerous defects." This assignment of error makes the main question in the case. While no controlling decision of this Court has been called to our attention, there is good authority for the holding that it is incumbent upon the plaintiff to show by evidence that the dealer, the seller of the article, knew, or by the exercise of ordinary care should have known, that the merchandise in question was inherently dangerous. We quote from the order of the trial Judge disposing of this question on motion for a new trial:

"It is not denied on the one hand that Sarah Guyton received the very grievous injury complained of, or that the injury was caused by the explosion of the bottle of nail polish which was purchased from the defendant. On the other hand it is not disputed that the nail polish was sold to her by defendant in the sealed container in which it was received by defendant from the concern which had prepared it for market. Neither is it contended by allegation or proof that defendant was negligent in the selection of the manufacturer from whom the article was purchased. On the contrary, it appears from the undisputed evidence that the manufacturer is a reputable and reliable concern. In its last analysis the contention of plaintiff is that the defendant was negligent in selling a dangerous substance containing inflammable and explosive tendencies, without giving warning of its dangerous character, and without furnishing directions for its use in a proper and safe manner.

"The basis of liability for negligence is knowledge of the hazard which results in injury. The knowledge may be actual or constructive. If constructive, it can exist only as the result of an opportunity afforded, through the exercise of reasonable diligence, to acquire knowledge.

"The plaintiff here offers no evidence to show that defendant had actual knowledge of the dangerous character

of the article sold by it. On the contrary, it appears to have been a thing that has for many years been in common and general use on the open market in the usual course of retail trade. But the plaintiff does stoutly contend that defendant should have known of its dangerous qualities, and that its failure to acquire this knowledge was the result of lack of diligence and of ordinary care. The delict she charges as constituting this absence of ordinary care is the defendant's failure to ascertain the dangerous elements of the article through a chemical analysis. I am unable to set up that duty as a criterion of due diligence under the facts of this case. To require such a standard of care on the part of dealers, in the absence of any facts reasonably calculated to place them on notice of the dangerous nature of the article, would be to impose upon them a burden that would be unreasonable. There would be almost no limit to the number of articles in ordinary daily use which retail dealers would find it necessary to subject to chemical analysis under such a requirement. Such a standard of diligence would amount to an intolerable burden which neither the law of negligence nor of public policy would require.

"The tragic consequences of this accident, even more than the interesting legal question involved, have led me to review with painstaking care the record of the trial, as well as the authorities cited by counsel. Only very substantial damages could afford adequate compensation for the admitted injury, in the event that that injury was the result of negligence of the defendant. Unfortunately for plaintiff, there is in the evidence in this case nothing from which such an inference could be drawn. No knowledge, either actual or constructive, of the alleged dangerous nature of the article involved, has been brought home to the defendant. There was, therefore, no duty resting on the defendant to give any warning to its customers. There is consequently no negligence.

"Plaintiff argues that the article which is involved here falls within that classification described as inherently or im-

minently dangerous; and that this characteristic imposes upon the dealer, as well as upon the manufacturer, the absolute duty, even in the absence of knowledge of its dangerous nature, to give notice of warning of its dangerous qualities. She cites authorities in support of this position. But when these authorities are carefully studied it will be seen that some evidence of knowledge of the danger, or of circumstances which would impute knowledge, is held to be necessary before a dealer may be held liable on the basis of negligence for injury sustained by a third person under the inherent or imminent danger doctrine. To hold otherwise would constitute a departure from the fundamental rule of law that negligence must be based upon knowledge or the opportunity to acquire it."

We have read with care the authorities cited by counsel in support of their several contentions (*McCrossin v. Noyes Bros. & Cutler, Inc.*, 143 Minn., 181, 173 N. W., 566; *Thornhill v. Carpenter-Morton Co.*, 220 Mass., 593, 108 N. E., 474; *Woodward v. Miller*, 119 Ga., 618, 46 S. E., 847, 64 L. R. A., 932, 100 Am. St. Rep., 188; *Peaslee-Gaulbert Co. v. McMath*, 148 Ky., 265, 146 S. W., 770, 39 L. R. A. (N. S.), 465, Ann. Cas., 1913-E, 392, and others), and while the decisions are not in full accord, they have been very helpful in our consideration of this assignment of error as stated. We deem it unnecessary to review the testimony pertinent here; it is correctly indicated in the portion of the order above quoted. It is clear that the facts of the case did not warrant the submission to the jury of the question of respondent's negligence as alleged by the plaintiff. As held below, there was no proof that the defendant had actual knowledge, and to have discovered the inherently dangerous nature of the nail polish sold, even if it were conceded to be of that nature, would have required the exercise of more than reasonable care on the part of the dealer, under the circumstances and facts as disclosed by the evidence. We are of opinion, and so

hold, that the conclusion reached by the trial Judge was correct.

The appellant also claims that there was error in refusing to admit certain opinion testimony offered by her, and in admitting in evidence articles and testimony as to usage and custom. In view of our holding that the trial Judge, for the reasons indicated, was right in directing a verdict for the defendant, these questions become academic. For that reason, therefore, we do not pass upon them.

The judgment of the Court below is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE C. T. GRAYDON concur.