19659

CLEMSON UNIVERSITY, Respondent, v. FIRST PROVIDENT
CORPORATION et al., Appellants
William B. DOUGLAS, Respondent, v. FIRST PROVIDENT
CORPORATION OF SOUTH CAROLINA et al., Appellants

(197 S. E. (2d) 914)

642

*T. Kenneth Sumerford, Esq.,* of Florence, *for Appellants,*

*Russell W. Templeton, Esq.,* of Columbia, *Amicus Curiae,*

*Messrs. Willcox, Hardee, Palmer, O'Farrell, McLeod & Buyck, R. M. DeBerry, Yarborough, Parrott & Anderson, McGowan, Nettles, Keller & Eaton,* and *E. N. Zeigler,* of Florence, *for Respondents,*

July 12, 1973.

Moss, Chief Justice:

Clemson University and William B. Douglas, the respondents herein, each instituted an action against First Provident Corporation of South Carolina and others, the appellants herein, seeking a temporary and permanent injunction for an alleged trespass committed by them. The question of the issuance of a temporary injunction was heard before The

Honorable W. L. Rhodes, Presiding Judge of the Court of Common Pleas, and an order was issued by him granting the injunction, *pendente lite,* pending a hearing on the merits. Thereafter, a consent order was issued consolidating and transferring the pending actions to the Civil Court of Florence for a determination of all issues involved. The respondents in their complaints, allege that each is the owner of a tract of land in Florence County situate northwest of the City of Florence and that First Provident Corporation, hereinafter referred to as the appellant, owns a tract of land located in the vicinity of lands of the respondents. It is then alleged that the appellant, through its agents, servants and employees, did enter upon the lands of the respondents, without their consent, and commenced the construction of a drainage canal across and through their lands bringing thereon for said purposes a dragline, bulldozer, trucks and other tools and equipment and did proceed to clear a thirty to forty foot right of way. It is further alleged that the appellant intends to construct such canal as a drainage for its real estate development. The respondents further allege that unless the appellant is enjoined they will suffer further irreparable damage.

The appellants, by their answers, sought to establish their right to construct the drainage canal alleging (1) a right of way for a ditch or water way pursuant to Sections 18-51 through 18-58 of the 1962 Code, (2) an easement by prescription, and (3) an easement by implication and a right of way by necessity.

This case came on for trial before The Honorable W. T. McGowan, Jr., Judge of the Civil Court of Florence. After the taking of the testimony and the receipt of several exhibits as evidence, he issued his order enjoining and restraining the appellant from clearing any right of way and constructing, digging or extending any drainage ditch, and from committing any trespass upon the property of the respondents provided, however, that the appellant:

"shall have leave to apply to this Court for modification of this order to permit them to clean the ditches upon the lands of said plaintiffs to the depth and to the width they existed at the time of their deepest depth and width at any time from their original construction, upon a showing that such will be practicable and not violate the rights of any other parties."

It appears that the appellant has been developing its property as a residential development known as Carver Place Annex. The streets were laid out and a number of residences were constructed in the subdivision. These residences have not been sold because the drainage facilities for surface water out of the subdivision were inadequate to meet the standards of various lending institutions which would provide the financing for the purchase thereof.

It appears that before the development of the subdivision was begun, the surface water drainage therefrom flowed into a ditch which ran through the subdivision in a general westerly direction crossing property belonging to one Ingram and then across the property of William B. Douglas and others, and finally into, Beaver Dam Creek. Intersecting the abovementioned ditch there is one running in a northerly direction on the boundary between the lands of Douglas and' Clemson University where it reaches a canal which empties into what is designated as McCall Branch and such ultimately empties into, High Hill Creek.

It appears that prior to September, 1971, the appellant had negotiated with various owners of the property along the ditches in question for a right of way to enlarge the ditch and construct one that would be sufficient to provide adequate drainage from Carver Place Annex. The appellant was not successful in obtaining such rights of way from the respondents, but nevertheless began clearing a right of way and commenced digging a ditch or canal along the existing ditches.

There is no question from the record that it was the intention of the appellants to materially increase and enlarge

the drainage ditches by making them wider and deeper. The record shows, even though there is some conflict in the testimony, that the north-south ditch running to High Hill Creek is about two feet wide and with an average depth of over three feet. The testimony further shows that the new ditch or canal would have a minimum width of eight feet and a depth of four to five feet. The east-west ditch was described as being about four feet wide and a depth varying from one foot to some four or five feet. The proposed new ditch or canal was described as being from seventeen to twenty feet in width but the depth thereof is not definitely given. There is testimony that in order to dig ditches of the size contemplated, a right of way approximately thirty or forty feet would be necessary to accommodate the machinery and equipment for this purpose. It is admitted that such right of way over portions of the lands of the respondents was cleared to this extent and for a distance of 500 to 600 feet.

After the commencement of these actions, the appellant served notice that it would invoke Sections 18-51 through 18-58 of the Code of Laws which gives land owners the right to open waterways for drainage across the lands of others.

It is provided in Section 18-51 as follows:

"Any person owning lands which can only be properly drained through or over lands of other persons through or over which there is no right of way, sufficient waterway or ditch cut may, as hereinafter provided, enter, construct and cut a waterway or ditch through and over such lands to the nearest waterway, ditch, stream, or outlet then existing."

It is not necessary to quote the remaining sections referred to as they are procedural in nature.

The trial judge held that Sections 18-51 through 18-58 of the Code, were unconstitutional, being violative of Article I, Section 17, of the 1895 Constitution of this State, which provides:

"Private property shall not be taken for private use without the consent of the owner, not for public use without just compensation being first made therefor."

The first question involved is whether or not the trial judge was in error in declaring the aforesaid sections of the Code unconstitutional.

The provisions of Section 18-51 through 18-58 were fashioned after and contained provisions of similar import to an Act, approved by the General Assembly of this State, on February 15, 1872, "to provide the manner for obtaining the right-of-way, where lands are surrounded by other lands." 15 Stats. 42. This Act was held constitutional pursuant to the provisions of Article 1, Section 23 of the 1868 Constitution of this State. *State v. Stackhouse*, 14 S. C. 417. However, after the adoption of our 1895 Constitution, the aforesaid Act was held unconstitutional under Article I, Section 17 thereof. *Beaudrot v. Murphy*, 53 S. C. 118, 30 S. E. 825. The rationale of this decision is here applicable.

It follows that the attempted taking involved in these cases is for private use and is prohibited under Article I, Section 17 of the Constitution. *Young v. Wiggins*, 240 S. C. 426, 126 S. E. (2d) 360.

The trial judge found that First Provident Corporation, the owner of Carver Place Annex, had an easement by prescription with respect to the ditches leading from its property to Beaver Dam Creek and High Hill Creek, both ditches having been in existence for many years. The respondents have not appealed from this finding. The appellants assert that the court was in error, after finding an easement by prescription in favor of First Provident Corporation, to then enjoin its agents, servants or employees from entering the lands of the respondents for the purpose of cleaning or repairing the ditches.

There can be no question that an easement of drainage through a ditch or across the lands of another may be acquired by prescription. In such case, the

owner of land over which a prescriptive right has been acquired cannot prevent drainage through his land to the extent of the right acquired by prescription. The rule set forth in 93 C. J. S. Waters § 121, at page 823, is applicable. We quote the following therefrom:

"* * * Thus, while the lower owner has no right to obstruct the flow of surface water where a prescriptive right of drainage has been acquired, such an easement gives no right to enlarge or vary the servitude beyond the conditions under which it has been exercised during the prescriptive period, although the upper owner has a right to clean the ditch. * * *"

In 25 Am. Jur. (2d), Easements and Licenses, Section 72, at page 478, we find the following:

"The rights of any person having an easement in the land of another are measured and defined by the purpose and character of the easement. A principle which underlies the use of all easements is that the owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden. Though the rights of the easement owner are paramount, to the extent of the easement, to those of the landowner, the rights of the easement owner and of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient tenement. The owner of an easement is said to have all rights incident or necessary to its proper enjoyment, but nothing more. And, if he exceeds his rights either in the manner or in the extent of its use, he becomes a trespasser to the extent of the unauthorized use."

In the case of *Capers v. M'Kee,* 32 S. C. L. R. 164 (1 Strob. 164), it was held that the owner by prescription, of a private way over another's land, has no right to cut ditches for the improvement of his way, without the consent of the owner of the soil, unless he has acquired such right also by a prescriptive use.

It is generally held that the owner of a servient estate will be given equitable relief where the owner of the easement makes an unauthorized or excessive use thereof. 28 C. J. S. Easements § 107, at page 797; *Shock v. Holt Lumber Co.,* 107 W. Va. 259, 148 S. E. 73; *Robertson v. Bertha A. Mineral Co.,* 128 Va. 93, 104 S. E. 832, and *Forest Land Co. v.Black,* 216 S. C. 255, 57 S. E. (2d) 420.

There is evidence that the appellants had entered upon the lands of the respondents, without any consent or permission to do so, and had cleared a thirty-five to forty foot strip adjacent to one of the ditches, destroying trees and virtually building a road to be used by heavy equipment in enlarging the ditches. These acts by the appellants placed an additional servitude upon the lands of the respondents. In so doing, the appellants became trespassers to the extent of the unauthorized use. The trial judge restrained the appellants from clearing any right of way whatsoever or constructing, digging or extending any drainage ditch and from committing any tresspass upon the lands of the respondents. The trial judge granted leave to the appellants to apply to the court for permission to clear the ditches upon the lands of the respondents to the depth and width that they had acquired an easement by prescription so to do.

We find no error on the part of the trial judge in granting the injunction. The trial judge has reserved and, upon proper motion, may modify his order to permit the appellants to clean the ditches upon the lands of the respondents. He has the right to fix the means and the methods by which such can be accomplished.

The appellants assert error on the part of the trial judge in failing to find that they were entitled to an easement by implication and a right of way by necessity over the lands of the respondents.

The appellants sought and the trial judge found that they had an easement by prescription. They claim, in addition to the acquired prescriptive rights, that

they also have an esasement by implication and a right of way by necessity in the same network of ditches. An easement by prescription is predicated upon adverse use for the prescriptive period. *Shia v. Pendergrass,* 222 S. C. 342, 72 S. E. (2d) 699. An easement by implication and a right of way of necessity are based on an implied grant. *Brasington v. Williams,* 143 S. C. 223, 141 S. E. 375.

The trial judge found that there was no evidence ▮▮▮▮▮ presented in this case of any conveyance that could create an easement by implication greater than the easement by prescription. A review of the record confirms the correctness of the ruling. The testimony in the case indicates that before severance of the original estate, agricultural operations were conducted thereon and that adequate drainage of the dominant estate existed. The record is silent as to when severance of that estate took place and what ditches, if any, existed at the time of such severance. Whatever easements are created by implication must be determined as of the time of the severance of the ownership of the tracts involved. 25 Am. Jur. (2d), Easements and Licenses, section 28, and 28 C. J. S. Easements § 31. The need to drain the property of the appellants for use as a residential housing development represents a change in circumstances brought about by appellants themselves and cannot be the basis for creating a way of necessity. Applicable to the factual situation here is the rule stated in *Merrimon v. McCain,* 201 S. C. 76, 21 S. E. (2d) 404, as follows:

"A way by necessity can be implied only when the necessity existed at the time of the grant. In other words, the necessity is to be determined from the conditions existing at the time of the conveyance.

"As a consequence of the rule stated this necessity must not be created by the party claiming the right of way. A grantee cannot so change the uses of land as to convert a way of convenience into a way of necessity. Nor can he create such necessity by subdividing and selling separate portions thereof." See, also, 28 C. J. S. Easements § 35.

The appellant contends that the respondents' refusal to allow restoration of the ditches so as to dispel water from its property constitutes a nuisance. The error of this argument is that the respondents have never denied the appellant the right to restore the ditches and have not done any acts, such as the erection of barriers or embankments to prevent the flow of water from the lands of the appellant through the ditches that have existed for many years. The accumulation of water on the lands of the appellant is the result of its own actions in the construction of a new ditch or canal which did not follow the lines of the old ditches on the appellant's property. This action of the appellant has caused the collection of surface water on its own property. There is no evidence in this case that the respondents did any acts that could be construed as a nuisance.

Since there will undoubtedly be further proceedings below certain aspects of the order of the trial court require further comment on our part lest they become the law of the case to the erroneous prejudice of the appellant. While under the circumstances of this case it was appropriate for the court to retain jurisdiction of the matter and to reasonably fix the means and methods by which the prescriptive rights of the appellant to clean the ditches across the land of the respondents might be exercised, the court of course does not have the power to simply deny such rights.

The trial judge held that appellant had established its right to clean both ditches across the property of the respondents to the former depth and width thereof but concluded that doing so would serve no useful purpose. While the exercise of such right would not likely prove a complete solution of appellant's drainage problem, it is by no means clear that the exercise thereof would serve no useful purpose.

Of particular concern are the two bases of His Honor's conclusion that cleaning the east-west ditch would serve no useful purpose. The first basis was that property owners between Douglas and Beaver Dam Creek

were not parties to the litigation and would not be bound by the order. While these parties might well be proper and desirable parties, upon the present record their presence is not, we think, essential to the determination of the rights of those who are now parties to the action. The second basis was his finding of fact that the amount of water that would be emptied into the east-west ditch from a canal or ditch which appellant had already dug through the Pinemont Realty property (lying to the east of the property of respondents) would be such a large amount as to overflow the ditch and flood lands below the Pinemont Realty property, to-wit: lands of the respondents, *et al.* Appellant specifically excepted to such finding of fact as being without support in the evidence.

The record on appeal does not contain all of the evidence, but from what we have before us, we are inclined to agree with the appellant. In addition, from what information the record does contain, there is at least a serious question as to whether His Honor's findings of fact in this respect was contrary to natural law. For the present, however, we hold only that in any further proceedings His honor's finding in this respect shall not be deemed an adjudicated fact.

For whatever help such might be to the court or counsel in their efforts to find a satisfactory solution to the problems involved in this case, we call attention to the fact that the courts of New Jersey seem to have had more occasion to deal with similar problems than most courts. See the case of *Hughes v. Knight,* 33 N. J. Super. 519, 111 A. (2d) 69, the authorities therein cited, and also *Grammas v. Colasurdo,* 48 N. J. Super. 543, 138 A. (2d) 553. An annotation on prescriptive drainage easements is contained in 55 A. L. R. (2d) 1144.

The judgment of the court below, as herein modified, is affirmed and the case remanded to the lower court for such further proceedings as may be deemed advisable in the light of the views herein expressed.

Modified, affirmed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.